**In the Matter of Joseph A. SUTERA, Debtor.**

**Bankruptcy No. 2–90–02737.**

United States Bankruptcy Court, D. Connecticut.

June 24, 1992.

John W. Hogan, Jr. and Debra A. Weecks, Hogan, Rini & Mednick, P.C., New Haven, Conn., for movant.

Thomas C. Boscarino, Boatman & Boscarino, Glastonbury, Conn., for Patrick W. Boatman, trustee.

MEMORANDUM AND ORDER ON (PLEADING TREATED AS A) MOTION TO QUASH EXAMINATION ORDERED UNDER FED.R.BANK.P. 2004

ROBERT L. KRECHEVSKY, Chief Judge.

## I.

### ISSUES

The motion before the court raises issues of (1) the asserted impact of Fed.R.Bank.P. 7027 on Fed.R.Bank.P. 2004, and (2) the extent of a creditor's obligation to turn over, pursuant to Rule 2004, documents involving his proof of claim.

## II.

### BACKGROUND

On December 5, 1990, shortly after Joseph A. Sutera was announced by The Massachusetts Lottery Commission as the winner of the Mass Millions Lottery in the amount of $9,916,540, an involuntary chapter 7 bankruptcy petition was filed against him. The court, on February 6, 1991, entered an order for relief, and Patrick W. Boatman, Esq., became the trustee of Sutera's estate. Sutera, in his "Statement of Financial Affairs," described himself as engaged only in a "real estate" business, but the trustee asserts that over 950 proofs of claim have been filed in the estate totaling in excess of 20 million dollars.

James J. O'Boyle (O'Boyle) filed one such proof of claim on April 18, 1991, listing his address as P.O. Box 484, Stratford, Connecticut, and asserting an unsecured debt of $626,000 for monies loaned Sutera. Following a telephone conversation on April 1, 1992, the trustee wrote O'Boyle a letter indicating some concern about how to determine the debt due O'Boyle and advising that he was "attempting to allow Proofs of Claim against Mr. Sutera's estate for only those amounts of money that the creditors can reasonably demonstrate they lent to Mr. Sutera less [repayments]." The letter concluded as follows:

> In order to complete my review of your Proof of Claim, I again request that you furnish me copies of all cancelled checks or other documentation showing that you, in fact, gave equivalent value to Mr. Sutera on those occasions between March 18, 1989 and December 21, 1989, when he issued you promissory notes. I also desire to examine whatever documentary evidence you have showing your receipt of payments from or on behalf of Mr. Sutera. Unless I am in receipt of these materials within a reasonable period of time, I will have not [sic] choice but to object to the allowance of your Proof of Claim at any level. If you have any questions concerning the information that I seek, or otherwise, have a problem making it available to me within a reasonable period of time, please contact my office to discuss this. I am taking this position across the board with Mr. Sutera's creditors in order to insure that only those persons who were his bona fide creditors on December 5, 1990 receive payments from those funds coming to Mr. Sutera as a result of his Massachusetts Millions winnings and any other funds that I am able to recover in the context of his bankruptcy case.

*O'Boyle Exh. 1.*

O'Boyle failed to respond and on April 30, 1992, the trustee filed an application for an examination of O'Boyle, pursuant to Rule 2004,[1] which the court granted, *ex parte*, on May 5, 1992. The order provided that "within the scope of matter outlined in Fed.R.Bank.P. 2004(b) ... the movant may examine James J. O'Boyle." On May 7, 1992, O'Boyle filed an "Objection To Application For Examination of James J. O'Boyle Under Bankruptcy Rule 2004," on which pleading the court held a hearing on May 21, 1992. Inasmuch as the order permitting O'Boyle's examination had already entered, the court treated O'Boyle's objection as a motion to quash the examination. *See* 8 *Collier on Bankruptcy* ¶ 2004.04(2) at 2004–10 (15th Ed.1992) ("When the debtor or a third party believes that the Rule 2004 examination is beyond the scope allowed under Rule 2004(b), the affected debtor or entity may move to quash the examination.").

---

1. *Rule 2004. Examination*
   (a) *Examination on Motion.* On motion of any party in interest, the court may order the examination of any entity.
   (b) *Scope of Examination.* The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the adminis-

tration of the debtor's estate, or to the debtor's right to a discharge....
   (c) *Compelling Attendance and Production of Documentary Evidence.* The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

## III.

## DISCUSSION

### A.

■ O'Boyle's argument for quashing his examination relies on the proposition that where "the Federal Rules of Civil Procedure apply, Bankruptcy Rule 2004 should not be used." *O'Boyle Memo* at 2. Although O'Boyle concedes that neither an adversary proceeding nor a contested matter involving him has commenced, he contends that the quoted portion of the trustee's letter makes him "an expected adverse party" under Fed.R.Bankr.P. 7027 entitling him "to the benefits and protections of the Federal Rules of Civil Procedure," thereby precluding the trustee from utilizing Rule 2004. *Id.*

Rule 7027 states that "Rule 27 F.R.Civ.P. applies in adversary proceedings." Fed. R.Bank.P. 9014 provides that in contested matters an entity may utilize Rule 7027. Rule 27, entitled "Depositions Before Action or Pending Appeal," enables a person to file a verified petition in a United States district court "in the district of the residence of any expected adverse party" for the purpose of taking depositions of a person to perpetuate testimony where the petitioner asserts he expects to be a party in an action cognizable in a federal court "but is presently unable to bring it or cause it to be brought." Rule 27(a)(3) provides that the court shall enter the order only if it "is satisfied that the perpetuation of the testimony may prevent a failure or delay of justice...."

The trustee argues that O'Boyle's reliance on Rule 27 to avoid the use of Rule 2004 is tenuous and misplaced. The trustee, as an initial matter, asserts he does not now seek to perpetuate testimony but, rather, is fulfilling his responsibilities under Rule 2004 to conduct an examination on "the liabilities" of the debtor "or to any matter which may affect the administration of the debtor's estate." It is well settled that a Rule 2004 examination is a proper procedure to inquire into the basis for a filed proof of claim. *See, e.g., In re Arkin–Medo, Inc.*, 44 B.R. 138, 140 (Bankr.

S.D.N.Y.1984) ("Inquiry into the validity of the disputed claim for $1,600,000 held by Parker Brothers ... should properly encompass all the facts and circumstances ... [and] [t]he appropriate avenue for such inquiry is the examination of Parker Brothers ordered by the court pursuant to Bankruptcy Rule 2004.").

Furthermore, the trustee points out that the court holdings and the authorities generally concur that the deposition and discovery rules of Part V of the Federal Rules of Civil Procedure (Rules 26–37 adopted by Fed.R.Bank.P. 7026–7037) apply only when contested matters or adversary proceedings have been commenced and are pending. Only then most courts rule that Rule 2004 may be inapplicable. *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr.S.D.N.Y.1991) ("The cases are in agreement that once an adversary proceeding is in progress a creditor/party does not have a right to a 2004 examination."); *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr.D.Mass.1985) (Rule 2004 examination allowed because "Bankruptcy Rules 7026 through 7037 apply the Federal Rules of Civil Procedure only in adversary proceedings and no adversary proceeding has been commenced against the parties sought to be examined in this case."); *In re Mittco, Inc.*, 44 B.R. 35, 37 (Bankr.E.D.Wis.1984) (possible use of information gathered at Rule 2004 examination in anticipated adversary proceeding outside of bankruptcy court is not sufficient reason for denying examination); 8 *Collier on Bankruptcy*, ¶ 2004.03(1) at 2004–6 (15th Ed.1992) ("No contested matter or adversary proceeding need be on file as a prerequisite to conducting [Rule 2004] examination; in fact, if an adversary proceeding or contested matter is pending, the discovery devices provided for in Rules 7026–7037 ... apply and Rule 2004 should not be used."). *Cf. First Financial Sav. Assoc. v. Kipp (In re Kipp)*, 86 B.R. 490, 491 (Bankr. W.D.Tex.1988) (once adversary proceeding filed, "Rule 2004 may not be used to circumvent protections offered under the discovery rules, 7026 to 7037.") *with In re Analytical Systems, Inc.*, 71 B.R. 408, 413 (Bankr.N.D.Ga.1987) (pending contested

matter between parties does not debar Rule 2004 examination).

The court concludes that O'Boyle's argument that Rule 27 interdicts the use of Rule 2004 for his examination is not sustainable. Accordingly, the objection to the entry of the Rule 2004 order, treated as a motion to quash the examination, is denied.

### B.

Rule 2004(c) provides that production of documents during an ordered examination may be compelled by subpoena. *See note 1, supra.* The trustee apparently has yet to serve a subpoena on O'Boyle. The May 5, 1992 court order permits only the examination of O'Boyle within the scope of matters encompassed by Rule 2004, and the issue of document production normally is addressed after the service of a subpoena *duces tecum* and a subsequent challenge. Rule 2004 motions, as in this case, are typically granted *ex parte*, with notice of the examination thereafter given to affected entities. The parties have elided this distinction and requested the court to rule on whether the following two of five separate categories of documents the trustee will be seeking to compel O'Boyle to turn over are to be produced: (1) "Copies of the Claimant's federal and state income tax returns for calendar years 1988, 1989 and 1990;" and (2) "an itemized statement as to the amounts and dates of payment which have been or should have been credited against the Debtor." *Trustee's Application for Examination of James J. O'Boyle Under Bankruptcy Rule 2004, Schedule A.*

■ O'Boyle argues that his "tax returns are neither relevant nor necessary to the administration of the Sutera estate...." *O'Boyle Memo* at 6. The trustee responds that although O'Boyle has testified he received no principal payments from the debtor, based upon the debtor's

records, he has received some payments and whether "Mr. O'Boyle reported such payments as interest income on his federal income tax returns is a legitimate and reasonable inquiry by the Trustee in this Chapter 7 proceeding." *Trustee Memo* at 14. The court concludes that the trustee has sustained the burden he may carry to establish cause for production of the tax returns and that O'Boyle has not established that producing the tax returns subjects him to an undue burden. *See In re Arkin–Medo, Inc., supra;* Fed.R.Civ.P. 45(c)(3)(A)(iv).[2]

■ O'Boyle's contention that the trustee cannot require a deponent to prepare a document the deponent asserts is not in existence—the requested itemized statement of amounts and dates of payment on the debt—has merit. Notwithstanding the trustee's argument that the Official Form of the proof of claim O'Boyle used then provided that the claimant shall "[a]ttach an itemization of all amounts and dates of payments which have been credited against the debt,"[3] it is settled law that a person cannot be compelled to prepare a document not now in existence, in order to produce it. *See Wright & Miller, Federal Practice and Procedure: Civil,* ¶ 2210 at 625–626 (1978) ("Production cannot be required of a document ... yet to be prepared.... Under [present] practice the party merely requests production and if the document or thing does not exist the party served with the request may say this by way of response to the request."). The objection to the trustee's request for an itemized list, which O'Boyle asserts does not exist, is sustained.

### IV.

### SUMMARY

The motion (1) to quash the examination of James J. O'Boyle authorized by the or-

---

**2.** *Rule 45. Subpoena.*

    .      .      .      .      .

    (c)(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    .      .      .      .

    (iv) subjects a person to undue burden.

**3.** Official Form 10 (Proof of Claim) does not presently so provide.

der of the court dated May 5, 1992 is denied, (2) to quash the request to O'Boyle to produce his income tax returns for the calendar years 1988, 1989 and 1990 is denied, and (3) to quash the request to O'Boyle to prepare and produce an itemized statement of payments is granted. It is

SO ORDERED.